UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                              Case Number 10-CR-20017
v.                                  Honorable Thomas L. Ludington

DAVID ANDREW DELACRUZ-SLAVIK,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT, OVERRULING DEFENDANT'S OBJECTION TO PROPOSED EVIDENCE, AND DETERMINING EXCLUDABLE DELAY**

On January 27, 2010, David Andrew Delacruz-Slavic ("Defendant") was indicted on the following counts: (1) Attempt to Commit Murder; (2) Assault with Intent to Commit Murder; (3) Assault Resulting in Serious Bodily Injury Against a Child; (4) Torture; (5) Child Abuse in the First Degree; and (6) Assault with Intent to Commit a Felony [Dkt. # 8]. Now before the Court is Defendant's motion to dismiss indictment [Dkt. # 16], filed on June 14, 2010. The government filed a response to Defendant's motion [Dkt. #20] on June 25, 2010. Defendant did not file a reply. Also before the Court is Defendant's objection to proposed evidence offered under Federal Rule of Evidence 404(b) ("Rule 404(b)") [Dkt. # 17], filed on June 14, 2010. The government filed a supplemental brief regarding Defendant's objections to the proposed evidence [Dkt. #25] on September 2, 2010.

Generally, Defendant argues that he is not an "Indian" within the meaning of 18 U.S.C. § 1153. Each of the counts in the first superceding indictment allege in part that Defendant is an Indian who has committed an alleged illegal act against a non-Indian. Defendant asserts that the

Court should determine his Indian status prior to trial because a jury is unlikely to objectively consider this particular element of the alleged crimes if it concludes that he was otherwise responsible for the crimes.

In his evidentiary objection, Defendant argues that the government fails to describe with particularity a permissible purpose pursuant to Federal Rule of Evidence 404(b) – such as motive, intent, identity, or absence of mistake or accident – for admitting the proposed evidence of Defendant's prior conviction for Child Abuse - Second Degree. To the extent the proposed conviction is shown to be relevant to any proper purpose, Defendant asserts that the prejudicial effect of the evidence would far outweigh the probative value of the evidence and it should be excluded. The Court held a hearing on both motions on September 13, 2010. For the reasons stated below, the Court will **DENY** Defendant's motion to dismiss indictment and **OVERRULE** Defendant's objection to proposed evidence offered under Rule 404(b).

I

Defendant requests that the Court find good cause to waive the delay in filing of his motion to dismiss indictment pursuant to Federal Rule of Civil Procedure 12(f) based on voluminous discovery in the case, complexity of the issues presented, and ongoing discovery providing continuing information concerning the disputed issue. In response to Defendant's motion, the government argues that the Court should deny Defendant leave to file the motion because it is untimely and Defendant has not demonstrated excusable neglect under Federal Rule of Civil Procedure 6(b)(1)(B). Pursuant to the Court's Scheduling Order [Dkt. # 9], all motions were to be filed by May 14, 2010. Accordingly, the government is correct that Defendant's motion is untimely and may be denied on that ground. However, it is expeditious to consider the merits of Defendant's

motion as the issues will be relevant to trial questions. Moreover, as the relief sought by Defendant will be denied, the government will not suffer any prejudice as a result of consideration of the motion.

II

Defendant contends that the Court should consider the initial element of the offenses charged, namely that he is an "Indian" as defined by law, prior to trial to determine if this case should be dismissed because of a defect in prosecution, or, in the alternative, a lack of jurisdiction. Def.'s Mem. in Supp. of Mot. to Dismiss Indictment 1-2. Defendant asserts that a jury is unlikely to objectively consider this issue. *Id.* 3. In support of this contention, Defendant asserts that because of the nature of the charges against him, his right to have his Indian status independently decided and proven beyond a reasonable doubt would be substantially prejudiced. In other words, for the jury to find that Defendant committed the charged offenses and subsequently acquit him "because he is not technically an Indian would be highly unlikely." *Id.* Defendant further asserts that protecting his right to have this element of the charged offenses sufficiently proven by the government requires the Court to make the initial determination that Defendant does not, in fact, meet the definition of "Indian" as defined under the relevant statutes. *Id.* Defendant provides no legal support for this argument.

Defendant correctly asserts that the government has the burden of proving beyond a reasonable doubt that Defendant is an Indian. *United States v. Bruce*, 394 F.3d 1215, 1223 (9th Cir. 2005). Defendant incorrectly relies on *United States v. Ramirez*, 537 F.3d 1075 (9th Cir. 2008), in alleging that fulfilling this evidentiary burden requires proof that Defendant is a "Tribal Member within the meaning of the statute." Def.'s Mem. in Supp. of Mot. to Dismiss Indictment 2. Tribal

enrollment itself is not an absolute requirement for an individual to be considered an Indian for purposes of criminal prosecution. *United States v. Antelope*, 430 U.S. 641, 646 (1977). While the term "Indian" has not been statutorily defined, "[t]he generally accepted test for Indian status considers (1) the degree of Indian blood; and (2) tribal or government recognition as an Indian." *Bruce*, 394 F.3d at 1223. The first requirement of the test requires "some" Indian blood. *Id.* Thus, "evidence of a parent, grandparent, or great-grandparent who is clearly identified as an Indian is generally sufficient to satisfy this prong." *Ramirez*, 537 F.3d at (citing *Bruce*, 394 F.3d at 1223). Varying degrees of Indian blood, including one-eighth, have been deemed to be sufficient. *Bruce*, 394 F.3d at 1223-26; *Sully v. United States*, 195 F.3d 113, 117 (8th Cir. 1912); *see also United States v. Lawrence*, 51 F.3d 150, 152 (8th Cir. 1995) (deeming 11/128ths a sufficient degree of Indian blood).

The government contends that Defendant meets the first prong requirements as an "immediate family member" of a Saginaw Chippewa Indian Tribal Member. *See* Def.'s Mem. in Support of Mot. to Dismiss Indictment 2. According to the government, Defendant's mother is a tribal member, meaning that she has the minimum one-fourth Indian blood required by the Saginaw Chippewa Indian Tribe. Gov't's Response & Brief to Def.'s Mot. to Dismiss Indictment 4. This, in turn, means that Defendant has a minimum of one-eighth Indian blood.

The second requirement of the test requires evidence that "the Native American has a sufficient non-racial link to a formerly sovereign people." *Bruce*, 394 F.3d at 1224 (citation omitted). Courts analyzing this prong have considered evidence of: "1) tribal enrollment; 2) government recognition formally and informally through receipt of assistance reserved only to Indians; 3) enjoyment of the benefits of tribal affiliation; and 4) social recognition as an Indian

through residence on a reservation and participation in Indian social life." *Id.* (internal quotation marks and citation omitted). The extent to which an individual considered himself an Indian is most certainly relevant in determining his Indian status, and requires an analysis from the perspective of both the tribe and the individual. *United States v. Cruz*, 554 F.3d 840, 849-50 (9th Cir. 2009).

Defendant notes that he is not an enrolled tribal member and thus does not satisfy the first, and most important, of the *Bruce* factors. As noted above, this is not an absolute requirement. The government alleges that Defendant has received government recognition through receipt of assistance reserved only to Indians and has enjoyed benefits of tribal affiliation. Namely, Defendant took seven parenting classes at the Nimkee Memorial Wellness Center in 2008, and has had many Nimkee dental, medical and behavior health/mental health and substance abuse appointments between 1996 and 2009. Gov't's Response & Brief to Def.'s Mot. to Dismiss Indictment 5. These services allegedly are not available to non-Indians. *Id.* The government estimates that Defendant has had 100 or more tribal-related organization appointments. The government alleges that Defendants records identify Defendant as an "Indian" and "Native American," as well as Defendant identifying himself as an "Indian" and "Native American." *Id.* Defendant states that he only received some tribal services allowed to him as an immediate family member of a Tribal Member, but that he himself has never qualified for membership and is not a recognized member. Def.'s Mem. in Supp. of Mot. to Dismiss Indictment 2. There is also evidence that Defendant has social recognition as an Indian through residence on a reservation and participation in Indian social life.

Defendant contends that a jury could not objectively decide Defendant's Indian status during trial because the jury's ability to independently decide the issue would be substantially prejudiced due to the nature of the charges. Defendant provides no legal authority for this contention.

Defendant also concedes that his Indian status is an element of the crime. The government asserts that the jury will be instructed that one element of each crime is that Defendant is an Indian and cannot be convicted unless each element is proven beyond a reasonable doubt. Although Defendant may believe the jury will ignore the instruction and convict him regardless of his Indian status, there is a presumption that a jury will follow its instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Furthermore, jurisdictional elements, such as jurisdiction under 18 U.S.C. § 1153 based on a defendant's Indian status, are to be decided by a jury. *See United States v. Gabrion*, 517 F.3d 839, 871 (6th Cir. 2008); *United States v. Latouf*, 132 F.3d 320, 325 (6th Cir. 1997). More specifically, "Indian status . . . while essential to federal subject matter jurisdiction, is an element of the crime that must be submitted to and decided by the jury." *United States v. Stymiest*, 581 F.3d 759, 763 (8th Cir. 2009) (citing *United States v. Cotton*, 535 U.S. 625 (2002)).

Accordingly, Defendant's Indian status is an element of the crime and adequate justification has been provided to substantiate a jury question. Because Defendant's Indian status is not properly decided on a pretrial motion, Defendant's motion to dismiss indictment will be denied.

### III

In his objection to the government's proposed evidence under Rule 404(b), Defendant first raises an objection to the specificity of notice provided by the government's proposal to present evidence concerning six different incidents, of which only one resulted in a conviction. Defendant argues that the government's original notice was insufficient because it did not provide adequate information as to when the remaining enumerated incidents occurred or as to the nature of the alleged assaults or injuries to determine issues relevant to admissibility. However, the government provided a supplement to it's notice of intent to offer evidence under 404(b) and a response to

Defendant's objection [Dkt. # 25]. In its supplement, the government stated that it now intends to only introduce evidence of a single assault by Defendant on K.W. on or about June 6, 2008 that resulted in a conviction for Child Abuse - Second Degree in Bay County Circuit Court on or about October 19, 2009. The government withdrew its notice to introduce other prior bad acts listed in the original notice.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes . . . ." Fed. R. Evid. 404(b). The rule rejects character evidence when offered to prove action in conformity with character not "because character is irrelevant, on the contrary, it is said to weigh too much with the jury and to overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *See Michelson v. United States*, 335 U.S. 469, 475-76 (1948) (explaining the rationale of a similar common law rule before the adoption of the Federal Rules of Evidence).

That same evidence, however, may be introduced for one of the other purposes delineated by Rule 404(b) as long as it is (1) supported by sufficient evidence such that the jury could reasonably conclude it occurred, (2) probative of the asserted alternative purpose, and (3) its probative value is not substantially outweighed by the danger of unfair prejudice. *United States v. Stephens*, 549 U.S. 459, 462 (6th Cir. 2008). Rule 404(b) specifically identifies "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, [and] absence of mistake or accident" as permissible purposes for the introduction of character evidence. "[U]pon request by the accused, the prosecution . . . shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends

to introduce at trial." Fed. R. Evid. 404(b). Once the defense requests such evidence, the government is continually obliged to comply with the notice requirements of the Rule. *United States v. Barnes*, 49 F.3d 1144, 1148 (6th Cir. 1995). The government's notice under Rule 404(b) must be sufficiently specific to permit pretrial resolution of admissibility questions.

The government advances the following facts surrounding Defendant's prior assault conviction: During the 2008 incident, Defendant was alone in a bathroom with K.W. when K.W. suffered a skull fracture, a scalp hematoma, retinal hemorrhages of both eyes, and bruising of the ribs. Defendant initially told Detective Andy Longuski of the Michigan State Police that he was giving K.W. a bath and she hit her head on the side of the tub when she tipped over, causing her injury. Defendant later told Detective Longuski that after she tipped over, he picked her up and held her over his head and she slipped out of his hands. Defendant stated he did not think K.W. hit her head again because of this. Defendant later claimed that K.W. slipped out of his hands while he was holding her above his head for an unexplained reason and she hit her head on the tub, and then he grabbed her by the ribs and shook her to check if she was alright, causing her to hit her head on the bottom of the tub again. Defendant pleaded guilty to the charge of Child Abuse - Second Degree but has maintained what happened to K.W. during the 2008 incident was an accident.

Additionally, the government asserts that in the instant offense Defendant was the only adult at the house with five children, including the victim, for a two and a half hour period. Prior to being alone with the Defendant, K.W. had the flu but was otherwise in good physical condition. After being alone with the Defendant during the two and a half hour period, K.W. had the following injuries: throttle marks on her neck consistent with strangulation; bruising to the chest; bruising to the abdomen; head/brain injury consistent with a neck injury; chest injuries including a broken rib,

vomit in the lung, and a bruised lung; blood in the pelvis; rupture spleen; destroyed adrenal gland; elevated enzymes consistent with a blow to the body or a lack of oxygen; a bite mark on her side/back caused by Defendant which was allegedly confirmed through a bite mark comparison analysis and DNA testing; fingernail marks on both ears; and a broken nose. The government alleges that Defendant has given at least nine different inconsistent stories as to how K.W. received these injuries, including one version that the injuries were an "accident."

Furthermore, the government refutes Defendants contention that the prior assault is substantially dissimilar to the current assaults by highlighting the following similarities: both incidents involved the same victim; both occurred while the victim was ill; both were close in time to the Defendant giving the victim a bath; both occurred shortly after the victim woke up; both occurred when Defendant was the only adult in the room; both involved the victim being injured in multiple locations on her body; both involved serious head injury; both involved broken bones and rib injuries; both involved the victim having trouble breathing; both involved a delay before Defendant called 911 for help after the injuries were inflicted; both involved Defendant asserting multiple inconsistent stories as to how the injuries occurred; both involved Defendant changing his story about what happened; and both involved Defendant claiming, at some point, that what happened was an accident.

The government asserts that it intends to introduce evidence of Defendant's 2008 Child Abuse conviction to show, in relevant part: (1) the identity of the assailant; (2) Defendant's intent; and (3) that this assault was not a mistake or accident. The government argues that 404(b) is a rule of inclusion, rather than a rule of exclusion, since "only one use is forbidden and several permissible uses of such evidence are identified." *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir.

1985). The government asserts that the 2008 incident and the instant offense are so similar that it shows a "signature" when it comes to the identify of the perpetrator. To support this contention, the government relies on *United States v. Mack*, 258 F.3d 548, 553-54 (6th Cir. 2001), where the court found sufficient evidence of a signature with fewer similar facts than the instant case. Additionally, Defendant acknowledged during the hearing an intent to raise the defense that he was not the perpetrator, putting his identity in issue. Even if Defendant had not put his identity in issue by raising this defense, such a dispute is irrelevant because 404(b) evidence regarding an element of the crime is admissible even if undisputed. *United States v. Hamilton*, 684 F.2d 380, 384 (6th Cir. 1982).

The government also asserts that the 2008 assault is admissible to show intent. Prior assaults and threats against the same victim are admissible under 404(b) to show intent as long as the incidents are substantially similar and close in time to each other. *United States v. Wynn*, 987 F.2d 354, 357 (6th Cir. 1993). The government contends that the fact that Defendant was convicted of inflicting similar serious injuries against the same victim shows that he possessed the required intent in the instant case. *See Wynn*, 987 F.2d at 357; *see also United States v. Littlewind*, 595 F.3d 876, 881 (8th Cir. 2010) (stating that evidence of past crimes are probative of intent to commit similar acts and the probative value increases when it is the same victim); *United States v. Walker*, 428 F.3d 1165, 1170 (8th Cir. 2005) (stating that the probative value of a prior act increased when the victim was the same in both incidents). Every detail of the crimes do not have to be identical, *Hamilton*, 684 F.2d at 384, and the government contends that the incidents here, while there are minor differences, are very similar for the reasons laid out above. Furthermore, the incidents are close in time, with less than seventeen months separating the assaults and less than eleven days passing

between Defendant's sentencing for the 2008 incident and the instant offense. Substantially more time can pass between incidents without the incidents becoming too unrelated in time to be admissible. *See Wynn*, 987 F.2d at 357 ("Four years is not too long to be reasonably probative of intent."). Defendant has also put his intent in issue by asserting during the hearing that if he is found to be the perpetrator, he did not intend to harm the child.

Additionally, the government contends that the fact that Defendant had previously assaulted and abused the same victim just months before the instant offense is highly probative that the instant assault was not, in fact, an accident. As such, the government argues that Defendant's prior assault on K.W. that resulted in a conviction should be admitted because evidence of prior assaults, even on other victims, are admissible under 404(b) to show absence of mistake or accident as to the current incident. *United States v. Haukaas*, 172 F.3d 542, 544 (8th Cir. 1999).

Defendant acknowledged at the hearing that he disputes his identity as the perpetrator, and alternatively, if he is found to be the perpetrator, he claims he had no intent to harm the victim. For this reason, as well as the government sufficiently articulating alternative theories for admission of the prior bad act evidence, evidence of the prior conviction for Child Abuse - Second Degree is admissible under Rule 404(b). As a result, Defendant's objection to the proposed evidence under Rule 404(b) will be overruled if the probative value outweighs the prejudicial effect because the prior conviction evidence is not being proffered to show propensity to commit a crime or to prove contemporaneous conduct in conformity with those acts.

IV

Under a Rule 403 analysis, the danger of unfair prejudice must substantially outweigh the probative value for the evidence to be excluded. Fed. R. Evid. 403. The government argues that

here, as laid out above, the probative value is high with three applicable proper purposes for which the evidence is admissible and that any prejudicial effect can be minimized by the court reading a limiting instruction to the jury as to the limited purpose for which the evidence is being admitted. Defendant claims that the prejudicial effect of admitting his prior conviction for Child Abuse - Second Degree will far outweigh the probative value that the evidence would have in the case, and should be suppressed under Rule 403.

Defendant argues that the proposed "bad act" evidence will confuse the jury and that its limited probative value is outweighed by its prejudice. Defendant does not explain how the evidence would confuse the jury. Defendant notes that in *United States v. Wesley*, 409 F.3d 315, *amended by* 417 F.3d 612 (6th Cir. 2005), the Sixth Circuit reversed a conviction in which evidence of the defendant being in prison had been allowed by the trial court with a limiting instruction. In *Wesley*, the prosecution sought admission of a passage from a videotape where the Defendant referred to a prior conviction resulting in imprisonment. *Id.* at 622. The government argued that the passage was admissible not as "other act" evidence, but as "background," or *res gestae*, evidence. *Id.* The trial court found that the "background" evidence is not subject to 404(b), because it was inextricably intertwined with the charged offense, and the explanatory evidence was necessary to complete the story of the charged offense. *Id.* The Sixth Circuit overruled the trial court, finding that while the statements were relevant to show the defendant's intent in that case, it was not the only or the strongest evidence in that regard and that the probative value was substantially outweighed by the danger of unfair prejudice. *Id.*

Defendant argues that in the instant case, the proposed prior conviction for what he argues is a dissimilar occurrence rises above the level of unfair prejudice found in the mere mention of prior

imprisonment with a cautionary instruction in *Wesley*. Defendant also asserts that, as in *Wesley*, that the alleged purposes for the evidence are open to proof by other, less prejudicial, evidence. Here, however, the current proffer of evidence is of a similar occurrence with three relevant purposes outlined above, no other less prejudicial evidence is made apparent. Furthermore, Defendant disputed his identity as the perpetrator as well as alternatively asserting his lack of intent to harm the child. The probative value of his prior child abuse conviction for similar injuries to the same victim is consequently not substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403.

V

Accordingly, it is **ORDERED** that Defendant's motion to dismiss indictment [Dkt. # 16] is **DENIED**.

It is further **ORDERED** that Defendant's objection to proposed evidence offered pursuant to Rule 404(b) [Dkt. # 17] is **OVERRULED**. The government will, however, be directed to prepare an appropriate cautionary instruction with its first draft of the jury instructions.

It is further **ORDERED** that it is **DETERMINED** that the time from **June 14, 2010 to October 1, 2010** is **EXCLUDABLE DELAY** pursuant to 18 U.S.C. § 3161(h)(1)(D) and (H).

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 1, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 1, 2010.

                                        s/Tracy A. Jacobs
                                        TRACY A. JACOBS